UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN HOOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-03174-SEB-KMB |
| | ) | |
| WEXFORD OF INDIANA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**Order Granting Defendant's Motion for Summary Judgment and
Directing Entry of Final Judgment**

Plaintiff Brian Hook is an inmate at Pendleton Correctional Facility. He fell while working

during his prison job and injured his back and his teeth. Mr. Hook brought this lawsuit against

Dr. Alice Buckley and Wexford of Indiana, LLC alleging they denied him adequate medical care

in violation of the Eighth Amendment. Summary judgment was previously granted in favor of

Dr. Buckley because she was not working at Pendleton at the time of Mr. Hook's injury. Wexford

now moves for summary judgment contending Mr. Hook lacks sufficient evidence to present his

*Monell* claim to a jury. For the reasons that follow, Wexford's motion is **granted.**

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a

case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no

genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a

matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021).

A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
## Factual Background

Because Wexford has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to [Mr. Hook] and draw[s] all reasonable inferences in [his] favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

In April 2020, Mr. Hook worked in the auto body shop at Pendleton Correctional Facility. Dkt. 78-3 at 5, Deposition of Brian Hook. On April 6, after completing a repair, Mr. Hook fell ten feet off a ladder and injured his back and teeth. *Id.* at 5 – 6; dkt. 78-2 at 3, Hook Medical Records.

Mr. Hook presented to the medical unit shortly after his fall; he was able to walk there with assistance from others. Dkt. 78-3 at 6; dkt. 78-2 at 10. Nurse Amber Plasterer examined him and took his vitals. Dkt. 78-2 at 2 – 4. Nurse Plasterer noted that Mr. Hook had bruising to his chest area, pain in his elbow, a scrape on his right shin, and a broken tooth. *Id.* She also noted his range of motion for his chest, elbow, shin, and back was within normal limits and there was no numbness or swelling. *Id.* Mr. Hook was provided with Tylenol, and Dr. Duan Pierce ordered x-rays for his back and elbow. *Id.* Mr. Hook was told to purchase more off the commissary if necessary. Dkt. 78-3 at 6. The abdominal x-ray revealed nothing acute and no rib fractures.[1] *Id.* at 12. The elbow x-ray showed no abnormality, fracture, or dislocation. *Id.* at 13.

Later that day, Mr. Hook submitted a healthcare request asking to be seen by a dentist. Dkt. 78-2 at 11. He reported that he had fallen on a ladder, chipped his tooth, and needed it fixed. *Id.* At this time, only emergency dental treatment was available; routine dental care was not being provided in accordance with state and federal guidelines related to the Covid-19 pandemic. *Id.* Nonetheless, Mr. Hook was seen in the dental department that same day. Dkt. 78-2 at 15. Greg Noll, the dentist, examined Mr. Hook and considered his complaint of pain. *Id.* Dentist Noll failed to see any "noticeable injury to the tooth." *Id.* Mr. Hook was instructed to submit a healthcare request if the dental pain continued. *Id.*

---

[1] The doctor's report interpreting the x-ray states "Additional review to be used on the right and left fields demonstrate fracture, pneumothorax, or pleural reaction." *Id.* However, this appears to be a typographical error, as the x-ray doctor handwrote "fail to" before the word "demonstrates" along with his initials and date. *Id.*

Two days later, the auto body plant manager contacted medical to obtain more pain medication because Mr. Hook had used all of his Tylenol. Dkt. 78-3 at 6. In response, Mr. Hook was prescribed Naproxen, a pain relief medication. *Id.*; Dkt. 78-2 ¶ 9.

Mr. Hook was seen by Physician's Assistant Sheri Wilson on June 8, 2020 for a chronic care appointment for an unrelated condition. Dkt. 78-2 at 5 – 8. PA Wilson's note does not reflect any complaints of back or dental pain. *Id.*

On June 14, 2021—14 months after his fall—Mr. Hook submitted a health care request complaining of dental pain:

> I fell of (sic) a ladder last year and chipped three teeth[.] The dentist at that time said he couldn't do anything now one is hurting so I need something done. Work injury.

Dkt. 78-2 at 14. Mr. Hook was scheduled for a dental appointment in July 2021. *Id.* Sometime between this appointment and the time of his deposition, in September 2021, his tooth was pulled. Dkt. 78-3 at 7. Mr. Hook stated in his deposition, however, that he still has two teeth bothering him. *Id.*

### III.
### Procedural History

Mr. Hook filed this lawsuit on December 10, 2020. Dkt. 1. Mr. Hook alleged that he had "not been treated and or the treatment he received [was] ineffective." *Id.* at ¶ 20. He did not describe his injuries, what medical care he believed he was denied, or how he was harmed as a result.

The Court screened Mr. Hook's complaint and identified two Section 1983 claims to proceed in this lawsuit: a deliberate indifference claim against Dr. Alice Buckley and a *Monell* claim against Wexford of Indiana, LLC.[2] Dkt. 8. Dr. Buckley filed a motion to dismiss asserting

---

[2] Wexford is the corporate medical provider at Pendleton that employed the individual practitioners. Dkt. 16, Answer ¶ 3.

that she was not involved in his treatment. Dkt. 17.[3] In response, Mr. Hook sought to amend his complaint and proceed against a "John Doe" defendant until he could identify the proper individual defendant. Dkt. 19. The Court denied that motion, concluding it would be futile.  Dkt. 22. Specifically, the Court found that the amended complaint failed to assert the *Monell* claim pled in the original and that it could not proceed on a claim against an individual defendant who was not alleged to be involved in or responsible for Mr. Hook's medical care. The court allowed the action to continue with Mr. Hook's *Monell* claim as asserted in the original complaint.

The Court then issued a scheduling order specifically permitting Mr. Hook to amend his pleadings. Dkt. 27. The case proceeded through discovery; multiple motions to compel, dkts. 34, 39, 55, 57, 59, 60, 89, 91; a discovery conference, dkt. 50; and multiple extensions of the dispositive motion deadline, dkt. 43, 52, 62. Mr. Hook never sought to amend his pleadings or add any new defendants.

Wexford filed a motion for summary judgment in May 2022. Dkt. 76. Mr. Hook responded that there were still outstanding discovery issues, and he could not respond because he had difficulties receiving court filings. Dkt 81. The Court extended the deadline and ruled on the discovery matters. Dkts. 83, 84, 101. Mr. Hook timely responded. Dkt. 97. The motion is now ripe and ready for ruling.

### IV.
### Discussion

Mr. Hooks opposes summary judgment primarily on procedural grounds, arguing that the Court wrongly denied his motion to amend the complaint and that Wexford failed to produce

---

[3] The Court later converted Dr. Buckley's motion to dismiss into a motion for summary judgment and granted summary judgment because the undisputed record showed she no longer worked at the facility at the time Mr. Hook was injured. Dkt. 42.

certain evidence in discovery. For the following reasons, Mr. Hook's procedural objections are unfounded, his *Monell* claim fails on the merits, and Wexford is entitled to summary judgment.

### A.      Procedural Issues

The Court begins with Mr. Hook's arguments that (1) he has been prejudiced by the Court's denial of his motion to amend the complaint and (2) he has been prejudiced by the Defendants' failure to produce discovery.[4] These positions find no support from the law or the record.

#### 1. Motion to Amend.

Mr. Hook first contends that the Court wrongly denied his April 2021 motion to amend the complaint. *See* Dkt. 97 at 1. He is incorrect. As the Court explained in its denial, "'Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation.'" Dkt. 22 at 3 (quoting *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017)). Because personal involvement is required, "[i]t is pointless to include an anonymous defendant in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (cleaned up). His amended complaint was properly denied as futile.

However, even assuming that denial suffered from some defect, it was not prejudicial. In the thirteen months between the denial of leave to amend and Wexford's motion for summary judgment, Mr. Hook did not file an amended pleading or seek leave to amend and add the medical providers he purportedly wished to identify in his amended complaint. *See* Dkt. 20. The Court's scheduling order specifically allowed him to amend his pleadings. Dkt. 27. Rule 15 also liberally authorizes amendments. *See* Fed. R. Civ. P. 15(a)(2). To date, Mr. Hook has not sought leave to

---

[4] Mr. Hook also alludes to issues concerning his receipt of court documents. The Court already addressed this issue. Dkt. 83.

amend his complaint. Even if the Court allowed Mr. Hook to proceed with his amended complaint and use a John Doe placeholder, he eventually would have had to amend his complaint, name the individual defendant or defendants responsible for his care, serve that individual, and allow him or her to defend against the lawsuit. Mr. Hook had every opportunity to do take these actions after the Court denied his motion to amend, but he failed to do so. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) ("Williams stated that he would seek leave to amend his complaint once he learned the identity of this unknown and unnamed defendant. *Discovery was Williams's opportunity to identify this defendant, and he failed to do so before discovery closed* on August 18, 2006. Due to Williams's failure to identify this defendant and the lack of any record that this individual was served with process, the district court's grant of summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.") (emphasis added).

Mr. Hook asserts he could not properly amend his complaint because Wexford "refused and [] failed to provide those names of the person or persons involved[.]" Dkt. 97 at ¶ 53; *see also* ¶¶ 40, 55. To the extent Mr. Hook asserts that the defendants wronged him by failing to identify medical professionals involved in his care *before* he filed his amended complaint, discovery had not yet opened. To the extent he argues that the defendants failed to provide the requisite evidence during discovery, the record reflects otherwise. Mr. Hook received ample evidence in discovery to identify the individuals responsible for his medical care. Mr. Hook received initial disclosures from Wexford on July 12, 2021. Dkt. 29. These disclosures included over 200 medical records, Dkt. 27 ¶ A, Dkt. 60 ¶¶ 13, 14, which contain the names of the providers who treated him. *See e.g.* Dkt. 78-2 at 4 ("Document generated by: Amber D. Plasterer, LPN"); *id.* at 8 (Document generated by: Sheri Wilson, PA"); *id.* at 1 ("Provider: Pierce, Duan"). Mr. Hook—*in his own initial*

*disclosures*—identified several treatment providers at Pendleton Correctional Facility who would be possible witnesses. Dkt. 46-1. And in a motion to compel filed in December 2021, Mr. Hook identified five different medical providers working for Wexford. Dkt. 48 ¶ 4. Mr. Hook's assertion that he cannot identify the relevant treatment providers is simply belied by the record.

### 2. Wexford's Failure to Provide Discovery

Mr. Hook next contends he was prejudiced by Wexford's discovery responses which were either incomplete or evasive. Though the record is replete with discovery disputes, the Court rejects this argument too. Mr. Hook filed—and the Court adjudicated—eight motions to compel in this action. Dkts. 34, 39, 55, 57, 59, 60, 89, 91. The Court also held a discovery conference, Dkt. 50, and assisted Mr. Hook with obtaining discovery from non-party Indiana Department of Correction by endorsing a subpoena to its Chief Counsel. Dkt. 52. Other than the identity of the medical providers who were on-site or who provided treatment to Mr. Hook's injuries, he does not identify *specific* material discovery he sought and failed to receive. And for reasons already explained, Mr. Hook had ample opportunities to identify his medical care providers and amend his complaint if he wished to pursue them individually.

For those reasons, the Court concludes that Mr. Hook has not been prejudice by either the Court's April 2021 ruling denying leave to amend the complaint or Wexford's production of discovery.

### B. *Monell* Claim - Wexford

Turning to the merits, the action consists only of an Eighth Amendment claim for damages under 42 U.S.C. § 1983.[5] The Eighth Amendment's prohibition against cruel and unusual

---

[5] Mr. Hook's complaint also sought injunctive relief, but Wexford is no longer in control of his medical care, so these claims are **dismissed as moot**. *See Wilder v. Centurion Health Services, LLC*, No. 2:22-cv-00463-JPH-MJD, 2022 WL 155-23472, at *2 (S.D. Ind. Oct. 27, 2022)

punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Mr. Hook brings his Eighth Amendment claim against Wexford under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Private corporations acting under color of state law—like Wexford—are treated as municipalities for purposes of Section 1983 and can be sued when their actions violate the Constitution. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

The record before the Court would not allow any jury to resolve Mr. Hook's *Monell* claim in his favor. No evidence supports an inference that any medical care provider violated Mr. Hook's Eighth Amendment rights, much less that any violation was attributable to Wexford under *Monell*.

1. Constitutional Violation.

"Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

To survive summary judgment, Mr. Hook must offer evidence that his medical care providers acted with deliberate indifference—that is, that they consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Deliberate indifference

---

("The Court takes judicial notice that, as of July 1, 2021, Wexford has been replaced by Centurion as the contractor providing medical care for the [IDOC].").

requires more than negligence or even objective recklessness. *Id*. Mr. Hook "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*.

The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Dean*, 18 F.4th at 241 (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). The Seventh Circuit has also held that deliberate indifference occurs when the defendant:

- refuses "to take instructions from a specialist." *Petties*, 836 F.3d at 729.

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Dean*, 18 F.4th at 241–42.

The record before the Court does not show deliberate indifference by Mr. Hook's medical providers. After his fall, Mr. Hook presented to medical and was treated for his injuries. He was provided Tylenol and received x-rays that revealed no fractures or dislocations. He also was promptly seen by a dentist who did not notice any noticeable injury to Mr. Hook's tooth and directed him to follow up if the condition worsened. Two days later, after his pain worsened, Mr. Hook was prescribed additional pain medicine. In short, the record shows that Wexford's employees provided prompt, responsive care for Mr. Hook's injuries in the days after his fall.

Meanwhile, Mr. Hook does not explain how any medical provider was deliberately indifferent—and he has not done so at any point in this lawsuit. In his complaint, Mr. Hook alleged

that he "had not been treated and or the treatment he received [was] ineffective." Dkt. 1at ¶ 20. Even if true, this allegation alone would not allow a jury to find deliberate indifference under any of the standards cited above. In his summary judgment response—filed 20 months later— Mr. Hook still does not identify what additional treatment was required or what Wexford's employees were constitutionally required to do. In his deposition, he faulted the providers because there was no follow-up after the day of the incident and it took him a year to receive any dental treatment. Dkt. 78-3 at 6. But he admitted the only healthcare request form he had in his possession was the one from June 2021, to which the providers responded and treatment was provided.[6]

The record indicates that Mr. Hook submitted only one healthcare request related to his fall, and he submitted it more than one year later. The text of that complaint—stating that Mr. Hook fell off a ladder "last year" and "*now* one is hurting"—indicates that he had no unmet medical needs in the interim. Accordingly, no trier of fact could infer that Mr. Hook had unmet medical needs during that time, much less that any medical professional knowingly disregarded his serious medical needs. When Mr. Hook submitted a medical care request regarding tooth pain on June 14, 2021, a dental appointment was scheduled on July 27, 21, Dkt. 78-2, and his tooth was subsequently removed. Dkt. 78-3 at 7.

Mr. Hook argues that the individual medical providers failed to review Mr. Hook's symptoms, failed to take appropriate steps to protect him from future harm, and failed to ensure the harm does not occur again. Dkt. 97 at 4. But the evidence laid out above reflects that the medical professionals *did* review his symptoms and provide him care. Perhaps he wanted them to

---

[6] Mr. Hook stated that the medical staff only returns a copy of the request form to the inmate when the inmate is actually examined, implying that he may have submitted additional requests that received no response. Yet, he could not identify any dates on which he submitted additional health care requests. *Id.* at 6 – 7. Therefore, no evidence supports an inference that Mr. Hook requested medical attention for an injury sustained in his fall that was not provided.

do more, but he has failed to articulate how the treatment he received was inadequate. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) ("[A]n inmate is not entitled to demand specific care . . . and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field.") (internal quotations and citations omitted).

In sum, the record shows that the medical personnel responded promptly and considerately to the medical needs to which Mr. Hook alerted them. No rational jury could find they were deliberately indifferent. Mr. Hook has expressed generalized dissatisfaction with his treatment, but that alone cannot support an Eighth Amendment violation.

### 2. Corporate Action.

The critical question under *Monell* is whether a corporate policy or custom causes the harm as opposed to whether the harm simply resulted from one of the corporation's agents. *Glisson v. Ind. Dep't of Cor.*, 849 F.3d 372, 379 (7th Cir. 2017); *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) ("[T]o prevail on a § 1983 claim against a [corporation] under *Monell*, a plaintiff must challenge conduct that is properly attributable to the municipality itself.").

To present his *Monell* claim to a jury, Mr. Hook must show three things. First, he must show a deprivation of a federal right traceable to some corporate action. *Dean*, 18 F.4th at 235. At least three types of corporate action can support corporate liability: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *First Midwest Bank*, 988 F.3d at 986. Second, he must show the policy or custom demonstrates corporate fault, *i.e.*, deliberate indifference. *Dean*, 18 F.4th at 235. Finally, Mr. Hook must show the policy or custom caused the

violation of his Constitutional rights. *Id.* "To satisfy the standard, [Mr. Hook] must show a direct causal link between the challenged municipal action and the violation of his constitutional rights." *First Midwest Bank*, 988 F.3d at 987.

Mr. Hook has submitted two policies in an attempt to show that his deprivation can be traced to Wexford, but neither one helps his cause. The first policy appears to be Wexford's Hernia Management Guidelines. Dkt. 98 at 2 – 4. But this case does not involve hernias, and so it is not relevant. The second appears to be a Health Care Services Directive that describes meetings and reports required of Health Services Administrators and Wardens of each Indiana Department of Correction Facility. This too is irrelevant because Mr. Hook does not explain how this policy was unconstitutional or how Wexford had notice that its providers were providing inadequate treatment under it. Mr. Hook also does not explain how his injury was caused by this directive. These policies therefore are irrelevant and do not satisfy Mr. Hook's burden.[7]

Mr. Hook next asserts Wexford has a practice of not following its own policies. He has cited a dozen or so cases that purportedly demonstrate Wexford has such a practice. Dkt. 97 at 16 – 19. But these cases are no help. Several of these cases concern hernias, and Mr. Hook has not explained how practices concerning hernia treatment are relevant to his case. Regardless, the fact that Wexford has been sued, alone, does not demonstrate its practices are unconstitutional or otherwise present a serious risk of harm such that Wexford's continued adherence to them amounts

---

[7] Mr. Hook also references other Indiana Department of Correction policies. *See* Dkt. 97 at 15 (citing IDOC Policy 01-02-106 and IDOC Policy 01-02-106). But these policies are not in the record, and Mr. Hook does not explain how (1) these policies are unconstitutional or (2) Wexford was on notice that its practices under these policies led to constitutional violations. He has also not established that these were Wexford's policies instead of those of the IDOC. These references are therefore unpersuasive.

13

to deliberate indifference.[8] And, if Mr. Hook could use other lawsuits to prove that Wexford has a practice of failing to honor its own policies, he has not explained how Wexford's failure to adhere to the policy caused him any injury or what that injury was.

Finally, Mr. Hook asserts Wexford has policies of requiring multiple referrals before an inmate can see a specialist. Dkt. 97 at 20. However, Mr. Hook did not allege in his complaint, and he does not contend in his summary judgment materials, that he ever asked to be seen by a specialist or what injury required specialized care. Therefore, it is not clear how this policy is relevant to his claims.

In short, Mr. Hook has not identified any constitutional violation with respect to his medical care, or any Wexford policy or practice that caused him harm. Accordingly, Wexford is entitled to summary judgment on Mr. Hook's *Monell* claims.

---

[8] *See, e.g.*, *Taylor v. Indianapolis Metro. Police Dep't*, No. 1:09-CV-1399-TWP-DML, 2011 WL 2605654, at *5 (S.D. Ind. June 30, 2011) ("Plaintiffs' evidence of prior lawsuits does not show the requisite 'custom or usage' of excessive force and, once again, only invites the Court to speculate. For that matter, Plaintiffs do not attempt to show that any of the prior lawsuits or complaints are factually similar to the present circumstances. Courts have routinely held that a handful of complaints and filed lawsuits, without more, does not equate to a showing of a well-settled and widespread practice.") (collecting cases). Additionally, Wexford was granted summary judgment in three of the cases. *Stanton v. Wexford Medical*, No. 3:20-cv-378-MGG, 2022 WL 1719410, at *4 (N.D. Ind. May 26, 2022); *Keeylen v. Wexford of Indiana, LLC, et al.*, No. 1:20-cv-00756-JRS-DML (S.D. Ind. 2020) (Dkt. 61); *Ford v. Elrod*, No. 1:20-cv-00721-JMS-MPB (S.D. Ind. 2020) (Dkt. 59).

**IV.**
**Conclusion**

For those reasons, Wexford's motion for summary judgment, dkt. [76] is **granted**. This action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this order and the order granting Dr. Buckley's motion for summary judgment, dkt. [42].

     **SO ORDERED.**

Date:     3/28/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BRIAN HOOK
211604
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel